United States District Court
For the Northern District of California

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARSAPE S.A., | NO. C 03-4535 JW |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART JDSU'S MOTION FOR SUMMARY JUDGMENT, PARTIAL SUMMARY JUDGMENT AND PARTIAL JUDGMENT ON THE PLEADINGS; DENYING ARSAPE'S MOTION FOR SUMMARY JUDGMENT ON COUNT II OF COMPLAINT; GRANTING ARSAPE AND DMT'S MOTION FOR SUMMARY JUDGMENT ON JDSU'S EXPRESS CONTRACTUAL INDEMNITY CLAIM; GRANTING ARSAPE AND DMT'S MOTION FOR SUMMARY JUDGMENT ON JDSU'S EQUITABLE INDEMNITY/ CONTRIBUTION CLAIM; DENYING ARSAPE AND DMT'S MOTION FOR SUMMARY JUDGMENT ON JDSU'S CLAIMS RESPECTING ASSIGNMENT** |
| v. | |
| JDS UNIPHASE CORP., | |
| Defendant. | |
| AND RELATED COUNTERCLAIM AND THIRD PARTY COMPLAINT | |

## I. INTRODUCTION

Plaintiff Arsape S.A. ("Arsape") filed suit against Defendant JDS Uniphase Corporation ("JDSU") alleging breach of contract and various other claims based upon the cancellation of certain purchase orders between Defendant JDSU and Plaintiff's alleged assignor, Donovan Micro-Tek ("DMT"). JDSU responded by filing counterclaims against Arsape and a third party complaint against DMT, each containing substantially similar allegations.

Presently before the Court are numerous motions for summary judgment, partial summary

judgment, and judgment on the pleadings. The motions were heard on October 3, 2005 and submitted for decision.

## II. BACKGROUND[1]

Arsape manufactures and sells electrical products, and is incorporated under the laws of Switzerland with its principal place of business in Switzerland. DMT is Arsape's United States distributor, organized under the laws of California with its principal place of business in California. JDSU sells fiber optic communications equipment, and is incorporated in Delaware with its principal place of business in California.

In 1997, JDSU and DMT discussed JDSU's need for customized stepper motors that JDSU would integrate into its voltage control attenuator ("VCB") as part of its fiber optic communications equipment offerings. In particular, the parties discussed developing a custom leadscrew that would operate with JDSU's plastic nut. In this lawsuit, the parties strongly dispute whether and to what extent any rights and obligations arose as a result of the discussions over the development and manufacturing of the custom leadscrew. Arsape's complaint contains an allegation that JDSU "demand[ed] that Arsape build substantial inventories of changing new raw materials and place corresponding firm materials procurement commitments, so as to place Arsape in the position to ramp up its production dramatically just as soon as the newest tinkering was accomplished." Complaint, ¶15. Further, the complaint contains allegations that JDSU "instruct[ed] [Arsape] to obtain and make firm purchase orders in the very large quantities that would bring the lowest unit price." Id. Arsape allegedly complied with the demands and instructions "in reliance upon [JDSU's] continual assurances, promises and enticements that a justifying and reasonable commercial compensation was at hand." Id. at ¶16. In contrast, JDSU contends that the parties were engaged in a "development effort," and that it issued purchase orders to DMT for prototypes and stepper motors as well as for non-recurring engineering charges, that resulted in over $3 million payments to DMT.

It is undisputed, however, that JDSU issued at least two purchase orders to DMT: (1) a July 19,

---

[1] Any objections to evidence cited in this Order are overruled. Any objections to evidence not cited in this Order are deemed moot.

1  2000 order number 185096 for 42,500 stepper motors, with weekly deliveries of 2,500 stepper motors
2  beginning September 4, 2000 and ending December 28, 2000 (hereinafter "July 2000 Purchase Order");
3  and (2) a September 5, 2000 order number 195312 for 30,000 stepper motors, with weekly deliveries of
4  3,000 stepper motors starting January 4, 2001 and ending March 8, 2001 (hereinafter "September 2001
5  Purchase Order").

6  JDSU's Terms and Conditions, which were attached to the Purchase Orders, contained numerous
7  relevant provisions relating to, among other things, inspection, rejection, and cancellation of product; late
8  delivery; choice of law[2]; indemnity; assignment or transfer of rights or obligations; the scope of liability for
9  special, consequential, incidental, exemplary or indirect costs; and waiver of remedies. Significantly, the
10 parties dispute the force and effect of the JDSU Terms and Conditions.

11 JDSU began receiving stepper motors at its Ontario facilities. DMT eventually failed to meet the
12 delivery dates set forth in the Purchase Orders, however. On March 12, 2001, JDSU requested a
13 proposal for a revised delivery schedule to supply the undelivered stepper motors. On March 14, 2001,
14 Arsape supplied JDSU with a proposed revised delivery schedule. On April 5, 2001, JDSU sent an e-mail
15 advising Arsape that it would be canceling the Purchase orders. The next day, on April 6, 2001, JDSU
16 sent written notification that is was canceling the purchase orders.

17 In July 2003, DMT allegedly entered into an agreement to assign all of its potential claims against
18 JDSU to Arsape for ten dollars and did not retain any interest in the claims. Arsape, in turn, assumed all
19 liability that may arise from the assignment and control of the litigation, and filed suit against JDSU. The
20 complaint contains the following claims: (1) breach of a contract for the sale of specially manufactured
21 goods spanning 1997 to 2001; (2) breach of contract based upon purchase orders; (3) promissory
22 estoppel; (4) restitution; (5) "modification of contract"; (6) waiver; (7) "Breach of Contract -
23 Prevention/Hindering of Performance"; (8) "Waiver and Excuse - Prevention/Hindering of Performance";
24 (9) "Breach of Contract - Absence of Good Faith and Fair Dealing"; and (10) "Breach of Contract -

---

[2] The Terms and Conditions specified that the construction, interpretation and performance of the Purchase Order were to be governed by the applicable laws of the Province of Ontario and Canada.

3

1  Absence of Good Faith and Fair Dealing." Complaint, pp. 8-13. Arsape seeks damages in excess of
2  $1,300,000, as well as special, consequential, incidental, exemplary and indirect costs, expenses or
3  damages, including attorneys' fees.
4        JDSU answered, asserting nineteen affirmative defenses, and filed counterclaims for declaratory
5  relief, breach of contract, breach of the implied covenant of good faith and fair dealing, express contractual
6  indemnity, equitable indemnity and contribution. JDSU also filed a third party complaint against DMT,
7  asserting nearly identical claims for breach of contract, breach of the implied covenant of good faith and fair
8  dealing, express contractual indemnity, and equitable indemnity and contribution.
9        There are numerous motions presently before the Court. JDSU moves for summary judgment on
10 all ten claims. In the alternative, JDSU moves for partial summary judgment on Arsape's first and third
11 through tenth claims; judgment on the pleadings on Arsape's sixth, seventh, and eighth claims; partial
12 summary judgment on Arsape's claims for special, consequential, incidental, exemplary and indirect costs,
13 expenses or damages, including litigation costs and attorneys' fees; and partial summary judgment limiting
14 Arsape's damages to, at most, those cancellation costs incurred during the thirty day period following April
15 5, 2001. JDSU's motion raises essentially seven arguments: that Arsape is not the real party in interest; that
16 the assignment between DMT and Arsape is invalid; that as a matter of law, Arsape's breach of contract
17 claim for the development effort must be summarily adjudicated because it ignores the parties' written
18 agreement on the subject; that as a matter of law, Arsape's equitable claims must be summarily
19 adjudicated; that JDSU is entitled to judgment on Arsape's "affirmative defenses" claims; that as a matter of
20 law, Arsape's claims for special, consequential, incidental, exemplary or indirect costs, expenses or
21 damages, including litigation costs and attorneys' fees, are prohibited by the contract between the parties;
22 and that Arsape's claim for cancellation charges is limited to the 30 days after April 5, 2001.
23       Arsape moves for summary judgment on the breach of purchase order claim on the grounds that
24 JDSU violated paragraph 8 of the Terms and Conditions, or alternatively, that JDSU failed to provide
25 timely notice of any purported breach. Further, Arsape and DMT move for summary adjudication on the
26 assignment issue raised in JDSU's motions. Arsape and DMT also move for summary judgment on

4

1  JDSU's express contractual indemnity claims, equitable indemnity, and equitable contribution claims,
2  contending that these claims are not supported by the Terms and Conditions.

## III.  STANDARDS

A.  Judgment on the Pleadings

Rule 12(c), Fed.R.Civ.P., provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  The standard applied on Rule 12(c) motions is essentially the same as applied on motions brought pursuant to Federal Rule of Civil Procedure 12(b)(6):  judgment on the pleadings is appropriate when even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law.  Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990).  In deciding whether to grant a motion for judgment on the pleadings, not only are the material facts alleged in the complaint assumed to be true, but all inferences reasonably drawn from the facts must be construed, and all doubts resolved in favor of the nonmoving party.  McGlinchy v. Shell Chemical Co., 845 F.2d 802 (9th Cir. 1988); General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventists Church, 887 F.2d 228, 230 (9th Cir. 1989). The Court need not, however, assume the truth of legal conclusions in the complaint merely because they take the form of factual allegations.  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

B.  Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323.  If he meets this burden, the moving party is then entitled to judgment as a

5

matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. Id. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial. " Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson, 477 U.S. at 255); Matsushita, 475 U.S. at 588; T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Serv., 809 F.2d at 631. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

## IV.  DISCUSSION

A. The Assignment: Whether Arsape is a Real Party in Interest

In its summary judgment, JDSU contends that Arsape has no standing to pursue any breach of contract claims because DMT, and not Arsape, was a party to the Purchase Orders. JDSU contends that the purported assignment of rights between Arsape and DMT is invalid because the Terms and Conditions

6

1   prohibit such an assignment absent JDSU's consent.  See Terms and Conditions, ¶13 ("Seller may not
2   assign or transfer any right or obligations hereunder without the prior written consent of JDSU").  JDSU
3   contends that DMT and Arsape failed to seek, and JDSU did not give, the required consent.

4       In their motion on "JDSU's Claims Respecting the Assignment," Arsape and DMT contend that the
5   Terms and Conditions do not apply because the parties' contract for the sale of goods had already been
6   concluded orally prior to the issuance of the Purchase Orders, including the Terms and Conditions; that
7   those documents constituted JDSU's proposal to alter the already-concluded contract; and as such, the
8   proposal is not legally binding for a variety of reasons.  See Arsape's Supplementary Brief on Governing
9   Law.  Further, Arsape appears to argue in the alternative that even if the Terms and Conditions are legally
10  binding, the particular portion of those Terms and Conditions prohibiting assignment does not apply to
11  assignments of purely causes of action.

12      The Court finds that there is a conflict in the evidence with respect to whether DMT and/or Arsape
13  agreed to abide by the Purchase Order Terms and Conditions.[3]  On the one hand, JDSU persuasively
14  argues that the Purchase Orders, including the Terms and Conditions, constitute the only contract agreed to
15  by JDSU and DMT.  Furthermore, Arsape acknowledges and indeed relies upon the Terms and
16  Conditions to support some of its claims in this lawsuit.  On the other hand, Arsape and DMT contend that
17  the contract for the sale of goods had already been concluded orally prior to the issuance of the Purchase
18  Orders, including the Terms and Conditions.  California Commercial Code §2201(3) provides that a
19  contract for the sale of specially manufactured goods need not be in writing.  Arguably, the stepper motors
20  constituted specially manufactured goods.  Arsape and DMT have submitted copies of JDSU's purchase
21  orders stamped "Confirmation Only," as evidence of the alleged oral contract entered into prior to issuance
22  of the Purchase Orders.  To the extent the Terms and Conditions were not part of the preexisting oral
23  contract, they arguably constituted a proposal for "additional terms" under California Commercial Code
24  §2207, which did not become part of the contract because they constituted a material alteration.

---

[3] Furthermore, the choice of law issue cannot be definitively resolved until the force and effect of the Terms and Conditions are resolved.

Accordingly, the parties' respective motions for summary adjudication of the assignment issue are denied.

B.  JDSU's Motion for Summary Judgment on Claims 1, 5, 9 and 10

Arsape's first claim is predicated on an alleged agreement that was formed in 1997 and continued until 2001, and expressed by an integration "(1) of an assemblage of numerous documents and other communications that passed between [the parties] and (2) through [the parties'] conduct, behavior, and their course of performance." Complaint, ¶28.  This alleged agreement is "broader" than the Purchase Orders, and was "superimposed" over the Purchase Orders.  Complaint, ¶29.  The fifth claim is for modification of contract; the ninth and tenth claims are for breach of the covenant of good faith and fair dealing.[4]

JDSU contends that the first, fifth, ninth and tenth claims fail because there is no evidence of the alleged oral agreement; that in any event, the alleged agreement fails to satisfy the statute of frauds, as codified at California Commercial Code §2201; and further, that parol evidence cannot be introduced to contradict or vary the Purchase Orders.  To the contrary, Arsape and DMT contend that they have presented evidence of the oral agreement; that the law does not require the agreement to be in writing; and their evidence does not violate the parol evidence rule.

For purposes of the present motion only, the Court assumes, without deciding, that a contract for the sale of specially manufactured goods need not be in writing, as Arsape and DMT have asserted.[5] Nevertheless, under any parties' choice of law, Arsape has the burden of proving that there was an oral contract.  There is no evidence upon which Arsape can rely to meet its burden.  Arsape cites to the declarations of Jacques Richard, Gaylord A. Virden, and Rob Renshaw to support its position.  None of these references, however, supply evidence of the who, what, when, and where of the alleged oral

---

[4] The fifth, ninth and tenth claims do not specify whether they are based upon a modification of the oral contract described in claim one or based upon the contract memorialized by the Purchase Orders.

[5] Arsape and DMT's position appears to be supported by California law.  See Cal. Commercial Code §2201(3)(a).

contract.[6] For example, Jacques Richard's declaration describes discussions regarding development of the leadscrews without providing any specifics. Instead, Jacques Richard states in his declaration that he was "instruct[ed] and re-instruct[ed] to tinker and finagle with the Arsape leadscrew"; and that Arsape and DMT went through a "protracted four-year, blind, trial and error hunt for a custom leadscrew that would work to JDSU's and Smile's subjective satisfaction." Decl. of Jacques Richard, ¶¶12, 15. Jacques Richard states that he was instructed to "ramp up production"; and to "build substantial inventories of changing new raw materials and place corresponding firm materials procurement commitments." Id. at ¶¶30, 40. However, no details are provided regarding, for example, when to ramp up; how much inventory to build up; and what type of materials to procure and in what quantities. The only evidence of the who, what, when, and where of any contract between the parties is set forth in the written Purchase Orders. Therefore, the Court grants JDSU's motion for summary judgment on claims one, five, nine, and ten.

C.  JDSU's Motion for Summary Judgment on Equitable Claim 3

The third claim is for promissory estoppel. Arsape alleges that JDSU "by means of its promises induced DMT and/or Arsape to act to the detriment of one, the other or both to design and redesign the goods mentioned, manufacture special goods, manufacture work in process of special goods, build inventories of special materials and make firm commitments to procure special materials, knowing or able clearly to foresee that DMT and/or Arsape would so act, which they did; injustice can be avoided only by enforcement of Defendant's promises." Complaint, ¶36.

JDSU contends that the claim must fail because promissory estoppel is not available where the parties had a written, bargained for agreement supported by consideration which covered the performance in question. Building Services Co. v. National Railroad Passenger Corp., 305 F.Supp.2d 85, 96 (D.D. C. 2004). Arsape and DMT contend that the promissory estoppel claim is supported by Restatement of Contracts, Second, §§344(b) and 349.

---

[6] Furthermore, the citations are inadequate and below standard practice insofar as they lack any references to specific paragraphs, page numbers, or line numbers.

9

To recover under the doctrine of promissory estoppel, a party must establish (1) a promise, clear and unambiguous in its terms; (2) reliance on the promise; (3) reliance that was both reasonable and foreseeable; and (4) injury due to the reliance. <u>Van Hook v. Southern California Waiters Alliance, Local 17</u>, 158 Cal.App.2d 556, 570 (1958). Despite the voluminous evidentiary record, the only evidence of a clear and unambiguous "promise" between the parties is contained in the written Purchase Agreements. Therefore, the Court grants summary judgment on the third claim for promissory estoppel.

D.  JDSU's Motion for Summary Judgment on Equitable Claim 4

The fourth claim is for restitution. Arsape alleges that it "is entitled to recover against Defendant for the design and redesign of special goods, manufacture of special goods, manufacture of work in process of special goods, building of inventories of special materials and making of firm commitments to procure special materials, and related acts and circumstances." Complaint, ¶39.

JDSU contends that the claim fails because neither Arsape nor DMT conferred a benefit to JDSU that was not already paid for by JDSU. Arsape and DMT contend, however, that they are entitled to compensation that "covers expenditures and the other financial consequences of its preparation – putting itself in the position to perform the contracts – including the two purchase orders cancelled." Response of Arsape and DMT to JDSU's Motion, p.11.

As discussed previously, there is simply no evidence of any agreement between the parties other than the Purchase Orders. To the extent the parties had any further business dealings, the undisputed evidence shows that JDSU paid over $3 million for all delivered stepper motors, prototypes and non-recurring engineering charges. Erskine Decl., ¶¶4, 7. Therefore, the Court grants JDSU's motion for summary judgment on claim four for restitution.

E.  JDSU's Motion Judgment on the Pleadings as to Claims 6, 7, 8

In its sixth, seventh, and eighth claims, Arsape seeks recovery under various theories such as waiver, excuse and prevention and/or hindrance of performance. JDSU contends that the three claims are essentially affirmative defenses, and therefore provide no basis for recovery.

The Court agrees with JDSU's position. Claims six, seven, and eight essentially set forth affirmative

10

1  defenses and do not provide a basis for recovery.  Therefore, JDSU's motion is granted.  Claims six,

2  seven, and eight are ordered dismissed.  The Court regards claims six, seven and eight as affirmative

3  defenses pled against JDSU's counterclaims.  Nothing in the Court's ruling is intended to preclude Arsape

4  or DMT from asserting waiver, excuse, and prevention or hindrance of performance as affirmative

5  defenses.

### F.  JDSU's Motion re Damages

In its complaint, Arsape seeks special, consequential, incidental, exemplary or indirect costs, expenses or damages.  JDSU contends that all of these types of damages are precluded by paragraph 12 of the Purchase Orders' Terms and Conditions, which provides:

> In no event shall JDSU . . . be liable to seller for special, consequential, incidental, exemplary or indirect costs, expenses or damages including without limitation litigation costs, the loss of production or profit arising from any cause whatsoever, even if advised of the possibility of such costs or damages or even if such costs or damages is alleged to arise from negligent acts, omissions or conduct of JDSU . . . .  In no event shall JDSU's liability to seller under this agreement exceed amounts actually paid to seller for the products.

Terms and Conditions, ¶12.  JDSU further asserts that it is not liable for any cancellation costs pursuant to paragraph 8 of the Terms and Conditions, which provides:

> JDSU may, at any time, cancel, terminate, suspend performance of, or issue a hold on, elect to suspend (collectively "Cancellation"), the PO, in whole or in part, without Seller's consent, and, if applicable, JDSU agrees to negotiate in good faith a reasonable compensation amount.  Notwithstanding the foregoing, where JDSU provides Seller with notice of Cancellation of a PO at least thirty (30) days prior to the scheduled delivery date, JDSU shall have no liability or obligations to Seller whatsoever.

Terms and Conditions, ¶8.

The Court treats JDSU's motion as a motion to strike under Rule 12(f), Fed.R.Civ.P.  As discussed previously in connection with the assignment issue, there is a genuine dispute over whether the Terms and Conditions became part of the parties' contract.  Therefore, JDSU's motion is denied with respect to the issue of damages.

### G.  Arsape's Motion for Summary Judgment on Claim 2 – Breach of the Purchase Orders

Arsape moves for summary judgment on its claim for breach of the Purchase Orders under two different theories.  First, Arsape contends that under paragraph 8 of the Terms and Conditions, JDSU was

11

required, but failed to, "negotiate in good faith a reasonable compensation amount."  Second, Arsape contends in the alternative that under California and Ontario law, JDSU was required, but failed to, provide notice of any breach of the Purchase Orders, including any delay in deliveries.  Arsape reasons that under either of these two theories, it is entitled to a judgment that JDSU breached the Purchase Orders.

JDSU contends that paragraph 6 entitled "Late Delivery," and not paragraph 8 of the Terms and Conditions governs because Arsape failed to meet its delivery obligations.  Paragraph 6 provides as follows:

> Seller shall notify JDSU as soon as it becomes aware that it cannot meet the delivery date specified on the face of the PO and shall propose a new delivery date.  In the event of such delay, Supplier shall, at no additional cost to JDSU, employ accelerated measures such as material expediting fees, premium transportation costs or labour overtime to ensure the Products are delivered on or before the revised delivery date.  In the event a delay in delivery or the new delivery proposed by Seller is not acceptable to JDSU, in addition to any other rights and remedies that may be available to it at law, JDSU may cancel the PO without any liability whatsoever to Seller.

Terms and Conditions, ¶6.  JDSU contends that in light of the late deliveries, it has no liability whatsoever to Arsape.  With respect to Arsape's alternative argument, JDSU contends that it was not required to provide notice of any breach of the Purchase Orders because of the nature of the breach, namely non-delivery.  JDSU reasons that the law does not require notice of a breach based upon non-delivery because under such circumstances, the breach should be self evident to both parties to the contract.

As discussed previously, there is a genuine issue of material fact regarding the force and effect of the Terms and Conditions.  This alone forecloses summary judgment on claim two.

H.  Arsape's Motion for Summary Judgment on JDSU's Express Contractual Indemnity Claim

JDSU's counterclaim against Arsape and third party complaint against DMT include a claim for express contractual indemnity pursuant to the Terms and Conditions of the Purchase Orders.  In the counterclaim against Arsape, JDSU alleges that if Arsape is the assignee of DMT, JDSU "is entitled to indemnification from Arsape for all otherwise recoverable damages, expenses and costs it incurs in connection with the lawsuit."  JDSU's third party complaint against DMT includes a similar allegation that JDSU "is entitled to indemnification from DMT."

12

Arsape and DMT contend that paragraph 10 of the Terms and Conditions does not provide for express contractual indemnity in the manner pled by JDSU, and therefore they are entitled to judgment on the express contractual indemnity claims. They reason that JDSU's claims for express indemnity are "ludicrous"[7] because they seek indemnity from Arsape for Arsape's alleged breach, or alternatively indemnity from DMT for DMT's alleged breach.

Based upon the undisputed evidence, Arsape and DMT are entitled to summary judgment on JDSU's claims for express contractual indemnity. Paragraph 10 of the Purchase Orders' Terms and Conditions provides as follows:

> Seller agrees to indemnify and hold harmless JDSU . . .from any and all loss, damage, liability, cost . . . or any other expense of whatever nature (collectively "Claims") arising out of any act or omission of Seller (including negligence) directly or indirectly relating to the PO, the use or sale of the Products, whether alone or in combination, or work performed pursuant to the PO. The foregoing includes without limitation any Claims relating to allegations, actions or proceedings for breach of contract, in tort (including negligence), intellectual property infringement, any statutory, regulatory or other legal claims, claims for bodily injury (including death) and damage to property. Seller agrees to furnish, upon request by JDSU, evidence of comprehensive general liability insurance with minimum limits of $US1,000,000. In the event of material change or cancellation of Seller's insurance coverage, seller shall ensure JDSU is given thirty (30) days prior written notice by either Seller or Seller's insurance company.

As the language cited above makes clear, the duty to indemnify and hold harmless is triggered by claims arising out of the acts or omissions of DMT directly or indirectly relating to the Purchase Orders. Arsape's instant complaint against JDSU cannot fairly be characterized as arising out of the acts or omissions of DMT. Rather, Arsape is attempting to step into the shoes of DMT to seek recovery against JDSU for JDSU's alleged breach of contract. JDSU has asserted defenses based upon allegedly improper acts or omissions by DMT; however, these defenses do not change the fundamental character of Arsape's claim. Therefore, the Court grants summary judgment on JDSU's express contractual indemnity claims.

I. Arsape and DMT's Motion for Summary Judgment on JDSU's Equitable Indemnity/Contribution Claim

JDSU's counterclaim against Arsape and third party complaint against DMT include claims for "equitable indemnity/contribution." These claims are legally flawed for the same reasons the express

---

[7] Arsape and DMT's Motion for Summary Judgment On JDSU's Express Contractual Indemnity Claim, p. 5.

13

1 contractual indemnity claims are flawed.  Accordingly, the Court grants summary judgment on JDSU's
2 equitable indemnity/contribution claims.

## V.  CONCLUSION

JDSU's motion for summary judgment, partial summary judgment and partial judgment on the pleadings is granted in part and denied in part as follows. JDSU's motion is denied with respect to the issue of assignment.  JDSU's motion is granted with respect to claim one, five, nine, and ten.  JDSU's motion is also granted as to claims three and four.  JDSU's motion is also granted as to claims six, seven and eight. JDSU's motion is denied with respect to the issue of damages.

Arsape's motion for summary on claim two is denied.  Arsape and DMT's motion for summary judgment on JDSU's express contractual indemnity claims is granted.  Arsape and DMT's motion for summary judgment on JDSU's equitable indemnity/contribution claims is also granted. Lastly, Arsape and DMT's motion for summary judgment on JDSU's claims respecting assignment is denied.

Dated: November 3, 2005  /s/James Ware
03cv5435sj                                    JAMES WARE
                                              United States District Judge

14

**THIS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Nicole P. Dogwill		ndogwill@graycary.com
Jeffrey J. Lederman	jlederman@graycary.com
Gaylord A. Virden		gavyls62@msn.com

**Dated: November 3, 2005**				**Richard W. Wieking, Clerk**

						**By:_/s/JW Chambers_____**
						    **Ronald L. Davis**
						    **Courtroom Deputy**