**\*E-FILED 5/26/06\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARSAPE S.A.,<br><br>       Plaintiff,<br><br>   v.<br><br>JDS UNIPHASE CORPORATION,<br><br>       Defendant. | NO. C 03-04535 JW (RS)<br><br>**ORDER RE MOTIONS TO COMPEL AND MOTION FOR PROTECTIVE ORDER** |

## I.  INTRODUCTION

Before the Court are Plaintiff Arsape S.A.'s two motions to compel and Defendant JDS Uniphase Corporation's motion for a protective order.  Pursuant to the Court's prior order, the parties engaged in further meet and confer efforts, with the result that the scope of the matters in dispute was substantially narrowed from that presented in the papers.  Oral argument on the remaining controversies was held on May 17, 2006.  The matter having been fully briefed, the Court will grant the motions in part, and deny them in part, as set forth below.

## II.  BACKGROUND

JDS manufactured and sold "voltage controlled attenuators" (known as "VCB products"). JDS contracted with DMT, a U.S. distributor, to purchase "stepper motors" from plaintiff Arsape, a Swiss manufacturer, to be incorporated in the VCB products.

JDS subsequently cancelled two purchase orders for stepper motors.  Arsape obtained an assignment of rights from DMT, and filed this action against JDS alleging breach of contract with

1  respect to the two purchase orders, together with certain other claims.  The presiding judge has

2  disposed of all of Arsape's claims except for the breach of contract claims regarding the purchase

3  orders.

4  JDS counterclaimed alleging that the stepper motors Arsape supplied were defective and not

5  timely delivered.  After rulings by the presiding judge, JDS's remaining claims are for breach of the

6  same two purchase orders, and for declaratory relief that the assignment between DMT and Arsape

7  is invalid.

8  Arsape asserts that when JDS first cancelled the purchase orders, it said it was doing so

9  because of a "turn in the market" that had led JDS's own customers to cancel all their orders.

10 According to Arsape,  JDS did not claim there were any quality problems with the stepper motors

11 until one year later.

12 JDS is presently the defendant in a securities fraud class action pending in this district, *In re

13 JDS Uniphase Corp. Securities Litigation* C -02 1486 CW ("the securities litigation").  The

14 allegations in that action include charges that JDS was engaged in fraudulent schemes to manipulate

15 its sales figures and other financial data around the same time it placed the purchase orders at issue

16 here, and that the schemes collapsed around the same time as those orders were cancelled.

17

18                              III.  DISCUSSION

19     A. Arsape's Motion to Compel Production of Documents

20 As a result of the parties' agreements reached during the meet and confer process, the only

21 document requests remaining in dispute are Nos. 67, 73, and 76-80.  Generally speaking, these

22 requests are all directed to obtaining documents relating to the allegations of wrongdoing implicated

23 in the securities litigation.   As will appear, both sides have compromised as to these requests, but

24 the distance between their respective positions cannot be bridged without resolution of one

25 fundamental question.

26 JDS contends that the unproven allegations in the securities fraud case have nothing to do

27 with here is in essence only a simple contract dispute between it and a parts vendor, and that

28 Arsape's pursuit of this line of discovery is not based on legitimate trial preparation needs.

2

Nonetheless, JDS is willing to produce documents for all of the categories in dispute, *but limited to* information that specifically relates to products that incorporate stepper motors made by Arsape, or equivalent stepper motors from other suppliers.

Arsape, in turn, argues that the information sought is relevant because it goes to the truth of JDS's proffered reason for cancelling the purchase orders, and because there is a question regarding when JDS knew or should have known that its needs for stepper motors was likely on a downturn. Arsape is willing to limit each of these categories such that JDS need produce only information related to the "optics industry segment" of JDS's business. Arsape, however, is *not* willing to limit the categories only to products that incorporate its stepper motors or equivalents.

At the hearing, Arsape disclaimed any interest in receiving a document production of the scope that JDS contends would result from a literal reading of the requests. Arsape's legitimate concern, however, is that it be given a fair opportunity to evaluate independently the potential usefulness of the information JDS possesses in these categories to Arsape's claims and defenses, rather than being forced to rely on JDS's own evaluation of what might or might not be "relevant" for purposes of discovery or at trial.

One of the specific document categories at issue is what apparently was known within JDS as the "redbook." The record is unclear as to exactly what the redbook comprises, and there is uncertainty also as to how it was created and maintained, and a dispute as to how frequently it was updated. That notwithstanding, an order to produce that material for the relevant time period would be neither unclear nor particularly burdensome. JDS did assert privacy and confidentiality concerns, but none that are not adequately addressed under the existing protective order.

For its part, Arsape identified the information it believes is critical to its trial preparation as being the very types of information that it asserts was contained and reported in the "redbook." If the "redbook" in fact exists and was maintained in any fashion similar to what Arsape believes, it likely is the most concise and reliable source of the kinds of information Arsape is seeking, and its production should obviate the need to produce the materials encompassed by the broader scope of Arsape's remaining requests.

Accordingly, JDS will be compelled to produce "the redbook," without further limitation,

1  except that it may be designated for protection under the existing protective order. As to the balance
2  of the outstanding document requests, JDS shall be required to produce only such responsive
3  documents as may exist, within the limitations JDS proposed during the meet and confer process.[1]
4  This ruling is without prejudice to Arsape's right to renew its motion to compel if, after review of
5  the redbook and any other materials produced, it can articulate a basis on which a further production
6  would be warranted.

### B. JDS's Motion for Protective Order

JDS's motion for a protective order seeks relief from having to produce a Rule 30 (b) (6) witness to testify on topics 13-18. Those topics essentially correspond with the outstanding document requests, and present the same issues. Accordingly, the same result is warranted. JDS's motion for protective order is granted, to the extent that it need not produce testimony beyond the scope it proposed in meet and confer. The exception is Topic 18, which seeks testimony regarding the "redbook." As to that topic, JDS shall produce a witness to testify as to the redbook and the information contained therein, for the time period at issue.

### C. Arsape's Motion to Compel Further Deposition Testimony

The only remaining issue presented by this motion is Topic 12, which seeks testimony from a 30 (b) (6) witness regarding JDS's affirmative defenses. As the Court instructed at the hearing, Arsape is entitled to take testimony regarding the *factual basis* of JDS's affirmative defenses. JDS, therefore, shall produce a witness or witnesses prepared to testify regarding any and all such facts. Arsape is cautioned, however, that the testimony provided may not be treated in the same manner as responses to contention interrogatories. The witness or witnesses are *not* expected to apply fact to law.

---

[1] At the hearing, Arsape further conceded that JDS need not produce publicly available documents to which Arsape has equal access. This order does not require the production of any such documents, but the parties are encouraged to cooperate in facilitating Arsape's efforts to gather such documents in the most efficient manner.

## IV. CONCLUSION

Subject to the limitations set forth above, the motions are GRANTED.

IT IS SO ORDERED.

Dated: May 26, 2006

_____
RICHARD SEEBORG
United States Magistrate Judge

ORDER RE MOTIONS TO COMPEL AND MOTION FOR PROTECTIVE ORDER
C 03-04535 JW (RS)

5

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Nicole P. Dogwill     ndogwill@winston.com, tturner@winston.com; lmouallem@winston.com

Jeffrey J. Lederman     jlederman@winston.com, tturner@winston.com; ndogwill@winston.com; lmouallem@winston.com

Gaylord A. Virden     gavyls62@msn.com

William A. Wineberg     bwineberg@wsnlaw.com

Margaret Alexandra Ziemianek     mziemianek@wsnlaw.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: May 26, 2006**                                      **Chambers of Judge Richard Seeborg**

                                                             **By:      /s/  BAK**

ORDER RE MOTIONS TO COMPEL AND MOTION FOR PROTECTIVE ORDER
C 03-04535 JW (RS)